## HOFFMAN v WARDEN

Docket No. 110782. Submitted February 22, 1990, at Lansing. Decided
June 19, 1990. Leave to appeal applied for.

Edward H. Hoffman was struck by a freight train after being
released in the custody of his relatives by several Genesee
.County sheriff's deputies and Swartz Creek police officers.
Hoffman brought an action in the Genesee Circuit Court
against Genesee County Sheriff's Deputy Max Warden, the
County of Genesee, the City of Swartz Creek, the Genesee
County Sheriff, the Swartz Creek Chief of Police and several
Genesee County sheriff's deputies and Swartz Creek police
officers. Plaintiff alleged negligence by defendants in connection
with the failure of defendant sheriff's deputies and police
officers to take plaintiff into custody as a mentally ill person
requiring treatment under the Mental Health Code. The trial
court, Judith A. Fullerton, J., granted summary disposition in
favor of all defendants. Plaintiff appealed from the orders of
summary disposition as to all defendants except Genesee
County. The Court of Appeals affirmed the order of summary
disposition in favor of Swartz Creek, reversed the orders of
summary disposition in favor of the individual defendants, and
remanded the case for further proceedings. *Hoffman v Genesee
Co,* 157 Mich App 1 (1987). On remand the trial court granted
summary disposition in favor of all individual defendants.
Plaintiff appealed.

The Court of Appeals *held:*

1. The decision by defendant sheriff's deputies and police
officers not to take plaintiff into custody as a mentally ill
person requiring treatment pursuant to the Mental Health
Code was a discretionary act for which they, as lower level
governmental employees, enjoy immunity from tort liability
pursuant to the governmental immunity act. Additionally, the
Mental Health Code provides that peace officers may not be

REFERENCES

Am Jur 2d, Incompetent Persons §§ 33, 34; Sheriffs, Police, and
Constables § 159.
See the Index to Annotations under Incompetent and Insane Per-
sons; Police and Law Enforcement Officers; Sheriffs.

held civilly liable when acting in compliance with the code and in the course of official duty.

2. The alleged failure by defendants county sheriff and chief of police to properly instruct and supervise their employees with respect to policy relating to protective custody of mentally ill persons resulted from discretionary acts. Thus, these defendants are likewise immune from tort liability pursuant to the governmental immunity act.

3. The question whether there existed a special relationship between defendants and plaintiff such that defendants owed plaintiff a special duty of care was properly one for the trial court.

Affirmed.

1. MENTAL HEALTH — MENTALLY ILL PERSONS — PROTECTIVE CUSTODY — POLICE OFFICERS — GOVERNMENTAL IMMUNITY.

A decision by a police officer not to take an individual into custody as a mentally ill person requiring treatment pursuant to the Mental Health Code is a discretionary act for which the officer enjoys immunity from tort liability granted to lower level governmental employees under the governmental immunity act (MCL 330.1401, 330.1427; MSA 14.800[401], 14.800[427]).

2. MENTAL HEALTH — MENTALLY ILL PERSONS — PROTECTIVE CUSTODY — POLICE OFFICERS.

A police officer may not be held civilly liable for deciding not to take an individual into custody as a mentally ill person requiring treatment where the officer acts in compliance with the Mental Health Code and in the course of official duty (MCL 330.1427b; MSA 14.800[427b]).

3. MENTAL HEALTH — MENTALLY ILL PERSONS — PROTECTIVE CUSTODY — POLICE OFFICERS — POLICE CHIEFS — SHERIFFS.

A chief of police or a county sheriff who fails to properly instruct and supervise his employees with respect to policy relating to protective custody of mentally ill persons may not be held liable in tort since such failure results from a discretionary act for which he enjoys protection under the governmental immunity act (MCL 330.1401, 330.1427; MSA 14.800[401], 14.800[427]).

4. NEGLIGENCE — DUTY.

The question of "duty" is one solely for the court to decide, the essential question being whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person.

*Philip J. Olson, II,* for Edward H. Hoffman.

*Nill, Kirby & Rockwell, P.C.* (by *Robert H. Shannon*), for Max Warden, Daniel Spaniola and John P. O'Brien.

*Portnoy, Leader, Pidgeon & Roth, P.C.* (by *Robert P. Roth* and *Marc S. Berlin*), for Rick Clolinger, Robert R. Adams and Ray Adams.

Before: NEFF, P.J., and MACKENZIE and JANSEN, JJ.

PER CURIAM. Plaintiff appeals as of right from orders entered by the circuit court granting summary disposition in favor of defendants Max Warden, Daniel Spaniola, John P. O'Brien, Ray Adams, Robert Adams, and Rick Clolinger, pursuant to MCR 2.116(C)(7) and (10). We affirm.

I

The first question we address is whether defendant officers and deputies are entitled to immunity under either the governmental tort immunity act or the Mental Health Code. We answer this question in the affirmative.

This case is controlled by *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984), reh den 421 Mich 1202 (1985), which set forth the standard to be applied to governmental employees and agents acting in the course of their employment. It is undisputed that, except for Ray Adams and John P. O'Brien, the officers and deputies were lower level governmental employees.

In *Ross,* our Supreme Court set forth the circumstances in which lower level governmental employees are entitled to tort immunity:

Lower level officials, employees, and agents are immune from tort liability only when they are

1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;

2) acting in good faith; and

3) performing discretionary, as opposed to ministerial acts. [*Ross, supra,* pp 633-634.]

*Ross* also defined discretionary versus ministerial acts:

"Discretionary" acts have been defined as those which require personal deliberation, decision, and judgment. Prosser [Torts (4th ed)], § 132, p 988. This definition encompasses more than quasi-judicial or policy-making authority, which typically is granted only to members of administrative tribunals, prosecutors, and higher level executives. However, it does not encompass every trivial decision, such as "the driving of a nail," which may be involved in performing an activity. For clarity, we would add the word "decisional" so the operative term would be "discretionary-decisional" acts.

"Ministerial" acts have been defined as those which constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice. *Id.* We believe that this definition is not sufficiently broad. An individual who decides whether to engage in a particular activity and how best to carry it out engages in discretionary activity. However, the actual execution of this decision by the same individual is a ministerial act, which must be performed in a nontortious manner. In a nutshell, the distinction between "discretionary" and "ministerial" acts is that the former involves significant decision-making, while the latter involves the execution of a decision and might entail some minor decision-making. Here too, for clarity, we would add the word "operational" so the operative term would be "ministerial-operational" acts. [*Ross, supra,* pp 634-635.]

In determining whether a given act is discretionary or ministerial, a reviewing court should look to "the specific acts complained of, rather than the general nature of the activity." *Canon v Thumudo,* 430 Mich 326, 334; 422 NW2d 688 (1988), quoting *Ross, supra,* p 635. In *Ross,* the Court also rejected the proposed interpretation that acts which deviate from professional standards are, ipso facto, ministerial, and, quoting from Justice EDWARDS' opinion in *Williams v Detroit,* 364 Mich 231, 261; 111 NW2d 1 (1961), stated: "Discretion implies the right to be wrong." *Ross, supra,* p 628.

Plaintiff asserts that defendants decided that plaintiff, being a danger to himself and others, was required to be taken into custody pursuant to MCL 330.1401; MSA 14.800(401) and MCL 330.1427; MSA 14.800(427), and that, having made that discretionary decision, their failure to take him into custody was negligent and was the result of inaccurate information conveyed over the radio to the dispatcher and to Community Mental Health. According to plaintiff, this failure is ministerial in nature since it involves the execution of a prior decision, rather than the making of a decision. See *Ross, supra,* p 635. The crucial error in plaintiff's assertion, however, is that the initial determination to take plaintiff into custody was never made.

Section 401 of the Mental Health Code, MCL 330.1401; MSA 14.800(401), provides:

> As used in this chapter, "person requiring treatment" means (a), (b), or (c):
> (a) A person who is mentally ill, and who as a result of that mental illness can reasonably be expected within the near future to intentionally or unintentionally seriously physically injure himself or another person, and who has engaged in an act or acts or made significant threats that are substantially supportive of the expectation.

(b) A person who is mentally ill, and who as a result of that mental illness is unable to attend to those of his basic physical needs such as food, clothing, or shelter that must be attended to in order for him to avoid serious harm in the near future, and who has demonstrated that inability by failing to attend to those basic physical needs.

(c) A person who is mentally ill, whose judgment is so impaired that he is unable to understand his need for treatment and whose continued behavior as the result of this mental illness can reasonably be expected, on the basis of competent medical opinion, to result in significant physical harm to himself or others. This person shall be hospitalized only under the provisions of sections 434 through 438 of this act.

Section 427 of the code, MCL 330.1427; MSA 14.800(427), provides in pertinent part:

If a peace officer observes an individual conducting himself or herself in a manner which causes the peace officer to reasonably believe that the individual is a person requiring treatment as defined in section 401, the peace officer may take the individual into protective custody and transport the individual to a hospital for examination pursuant to section 429 or may notify the community mental health emergency service unit for the purpose of requesting mental health intervention services. If notified, the community mental health emergency service unit shall provide those mental health intervention services which it considers appropriate unless the individual declines the services. If the individual declines the services, the peace officer shall immediately transport the individual to a hospital.

Plaintiff argues that defendants failed to follow the mandatory language contained in the last quoted sentence of § 427 and, since execution of a mandatory order is a ministerial task, defendants

are not immune. This argument fails for several reasons.

First, contrary to plaintiff's assertion, there is no indication defendants requested "mental health intervention services." Defendants merely asked Community Mental Health whether plaintiff could voluntarily lodge himself there.

Second, the mandatory provisions of § 427 are not engaged until Community Mental Health is notified that the individual is a "person requiring treatment." Plaintiff cannot succeed unless he can show that defendants explicitly decided and then expressly notified Community Mental Health that plaintiff met the § 401 criteria. However much plaintiff may legitimately dispute the correctness of defendants' decision, and even assuming they had decided plaintiff needed treatment, there is no suggestion that such notice was ever given to Community Mental Health.

Third, plaintiff errs in asserting that defendants in fact made the decision that he qualified as requiring treatment under § 401. Sections 401 and 427 require that the decision whether to take an individual into custody be made by the officers on the basis of the manner in which the individual is conducting himself. Defendants were deposed at length on plaintiff's conduct and on their finding that plaintiff's conduct was insufficient to justify taking him into custody. The trial court properly considered this testimony and found the evidence to be "entirely that the activity involved was discretionary." We will not disturb this finding on appeal.

Plaintiff's argument that defendants employed an outdated memorandum which did not reflect the 1979 amendment to § 427 is moot. The permissive nature of § 427 did not change upon amend-

ment as applied to the facts of this case, and defendants were required under either version to determine that plaintiff met the § 401 criteria prior to taking him into custody. As the mandatory "shall" language added by the amendment does not come into play until that determination, plaintiff suffered no detriment despite the outdated memorandum.

Defendants are also immune under § 427b of the Mental Health Code, MCL 330.1427b; MSA 14.800(427b), which provides that an officer acting in compliance with the act is acting in the course of official duty and is not civilly liable for the action taken. In *Gilchrist v Livonia*, 599 F Supp 260, 264 (ED Mich, 1984), the court stated that §§ 401 and 427, as amended, do "not require a police officer to take persons requiring psychiatric treatment into custody; what is to be done under the circumstances is left to the discretion of the officer."

The Court in *Ross* also stated:

> Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers. The determination of what type of action to take, e.g., make an immediate arrest, pursue a suspect, issue a warning, await backup assistance, etc., is a discretionary-decisional act entitled to immunity. Once that decision has been made, however, the execution thereof must be performed in a proper manner, e.g., the arrest must be made without excessive force, the pursuit of the suspect must not be done negligently, the request for assistance must include reasonably accurate information, etc. [*Ross, supra,* pp 659-660.]

Plaintiff cites numerous alleged indications to show that he was clearly a danger to himself and others and that defendants therefore made the decision that plaintiff required treatment. Assuming that plaintiff was, in fact, as belligerent and threatening as claimed, all that would show is that defendants, perhaps negligently, decided incorrectly that he did not require treatment. This would obviously be a discretionary-decisional determination. *Canon, supra,* p 352.

MCR 2.116(C)(10) provides for summary disposition in cases where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. The court will consider the pleadings, affidavits, and other documentary evidence available to it. The party opposing the motion must prove that a genuine issue of material fact exists, and the appellate court is liberal in finding such a genuine issue of material fact. *Dumas v Automobile Club Ins Ass'n,* 168 Mich App 619, 626; 425 NW2d 480 (1988). Although plaintiff cites numerous alleged disputed facts, the facts supporting the trial court's determination that defendants never found plaintiff to be a "person requiring treatment" under § 401 are not disputed. The trial court considered the voluminous documentary evidence submitted with the motions and properly granted summary disposition under MCR 2.116(C)(10).

The standard under which this Court reviews summary disposition motions made pursuant to MCR 2.116(C)(7) is that this Court must accept all of the plaintiff's well-pled allegations as true and construe them most favorably to the plaintiff. *Male v Mayotte, Crouse & D'Haene Architects, Inc,* 163 Mich App 165, 168; 413 NW2d 698 (1987), lv den 429 Mich 901 (1988).

In *Berlin v Superintendent of Public Instruction,*

181 Mich App 154; 448 NW2d 764 (1989), this Court held that summary disposition in favor of individual governmental employees under MCR 2.116(C)(7) was premature, in that a determination of the discretionary or ministerial nature of the acts complained of required a more extensive factual record than was present. Here, after remand as ordered by this Court [*Hoffman v Genesee Co,* 157 Mich App 1; 403 NW2d 485 (1987), lv den 428 Mich 902 (1987)] and after extensive discovery, the trial court considered the record and properly determined that there was no dispute as to any material fact, that the acts complained of were discretionary, and that defendants were cloaked with immunity.

II

Plaintiff also contends that Ray Adams and John P. O'Brien are not entitled to immunity under the governmental tort immunity act or the Mental Health Code. According to plaintiff, Adams employed an outdated memorandum, which constitutes a failure to properly instruct his employees under *Ross,* and O'Brien relied on incorrect law in failing to instruct his employees that § 427, as amended, required them to take plaintiff into custody.

Defendants argue that *Ross* held that anyone responsible for establishing a policy was immune from tort liability and that allegations against defendants Ray Adams and John P. O'Brien constitute exactly that type of activity. Defendants also argue that the policy regarding § 427 is irrelevant because § 401 is determinative, as found by the trial court. Finally, defendants argue that Ray Adams and John P. O'Brien were the highest officials in their respective levels of government and were entitled to absolute immunity.

Defendants correctly note that, under *Ross,* those officials responsible for establishing policies are immune and that such immunity would encompass the allegations against defendants Adams and O'Brien. *Ross, supra,* p 651.

The failure to instruct and supervise is likewise discretionary, in that the allegations relate to failing to employ the proper policy, not to improperly instructing or supervising in derogation of the existing policy. Our Supreme Court in *Canon* reviewed an allegation that the defendant failed to "execute and/or supervise the execution of the treatment plan." *Canon, supra,* p 343. The Court of Appeals had held that "if defendant breached *any* duty relative to the execution of the treatment plan, he was not cloaked with individual immunity." Our Supreme Court rejected that holding, finding the analysis incomplete as not dealing with the specific acts alleged. Similarly, while defendants here may have been involved in the execution of the policies alleged, their primary responsibility, as stated in the complaint, was in establishing the policy. Thus, even if the policy as to § 427 were relevant, defendants would be immune. Summary disposition was properly granted to the police chief and sheriff.

In light of this determination, which is based on the assumption that defendants Ray Adams and John P. O'Brien were lower level employees, we do not reach the argument that they were entitled to absolute immunity.

III

Plaintiff also contends that a special relationship existed between defendants and plaintiff which defeats immunity. According to plaintiff, the presumption that a police officer owes a general duty

to the public is rebutted where there is a "special relationship" between the parties which the law recognizes as imposing a duty to conform to a particular standard of conduct. Plaintiff contends that defendants' misinterpretation of the law caused Fred Hoffman and Dennis Covell, who were already engaged in an attempt to protect plaintiff, to give up those efforts, since they would be futile in light of the law as improperly stated by the officers. Plaintiff argues that, at the very least, the determination of whether a relationship existed was for the jury, not the trial court, and so summary disposition was inappropriate. We disagree.

In *Horn v Arco Petroleum Co,* 170 Mich App 390, 392; 427 NW2d 582 (1988), this Court stated:

> The question of duty is one solely for the court to decide, with the essential question being whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person.

The officers here did not make the determination that plaintiff met the § 401 criteria. Therefore, no duty arose. In addition, the permissive nature of the statutes involved precludes any special relationship creating a duty. Summary disposition was properly granted.

Affirmed.